IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARCUS EUGENE POLLARD,<br>TDCJ #1374399, | § | |
| | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-0488 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent.[1] | § | |

## MEMORANDUM AND ORDER

Texas inmate Marcus Eugene Pollard (TDCJ #1374399) has filed a federal habeas

corpus petition under 28 U.S.C. § 2254, seeking relief from a felony conviction entered

against him in state court.  The respondent has answered with a motion for summary

judgment, arguing that Pollard is not entitled to relief.  [Doc. # 12].  Pollard has not filed a

reply and his time to do so has expired.  After considering all of the pleadings, the state court

records, and the applicable law, this Court **grants** the respondent's motion for summary

judgment and **dismisses** this case for reasons set forth below.

---

[1]    The petition named Nathaniel Quarterman as the respondent.  Rick Thaler has recently
replaced Nathaniel Quarterman as Director of the Texas Department of Criminal Justice -
Correctional Institutions Division.  Therefore, the Court substitutes Thaler as the proper
respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.      BACKGROUND

Pollard, who is incarcerated in the Texas Department of Criminal Justice -

Correctional Institutions Division ("TDCJ"), seeks federal habeas corpus relief from a felony

conviction that was entered against him in state court.  The state court records show that a

local grand jury returned an indictment against Pollard in cause number 9222, charging him

with murder in connection with the death of his 18-year-old wife, Megan Pollard.  At trial,

the State presented evidence that Pollard shot his wife in the head at close range with a

Mossberg pump-action shotgun.  Pollard claimed it was an accident.  A jury in the 258th

District Court of San Jacinto County, Texas, found Pollard guilty of murder as charged in the

indictment.  The same jury sentenced Pollard to serve fifty years' imprisonment.

On direct appeal, Pollard raised three issues related to rulings made by the trial court.

The state court of appeals rejected all of Pollard's arguments and affirmed the conviction in

an unpublished opinion after making the following summary of the facts presented at trial:

> During the early morning hours of June 16, 2005, Pollard called his
> uncle, who was staying with Pollard's mother, seeking help. Pollard's uncle
> went to Pollard's house and saw Megan Pollard, Pollard's wife, lying under
> the carport. After determining that Megan was dead, Pollard's uncle suggested
> that Pollard contact law enforcement.  Pollard refused and instead placed his
> two small children in his uncle's truck.  Pollard's uncle took the children to
> Pollard's mother's home and then contacted the sheriff's department.  Later,
> Pollard went to his mother's house and said that he wanted to say good-bye to
> his children.  He told his uncle that he was going to drive for a few days and
> then commit suicide. Then Pollard left.  Pollard's uncle contacted the sheriff's
> department again and reported that Pollard had just left the house.
>
> The police arrested Pollard on Highway 59. After obtaining consent for
> a search of Pollard's home, the police recovered a shotgun from under the
> couch.  Dr. Tommy Brown performed an autopsy on Megan and determined

that she died of a shotgun wound to her head.  The State indicted Pollard for the murder of his wife, Megan.  At trial, the State asserted that Pollard shot Megan on the front porch of the house and then moved her body to the carport. Pollard contended that while he and Megan argued, they struggled over the gun and it discharged as Megan grabbed the barrel.  After hearing the evidence, the jury convicted Pollard of murder and assessed his punishment at fifty years' confinement.  Pollard timely filed his notice of appeal.

*Pollard v. State*, No. 09-06-0294, 2007 WL 2493144 at *1 (Tex. App. — Beaumont Sept. 5, 2007).  Thereafter, the Texas Court of Criminal Appeals refused Pollard's petition for discretionary review.

Pollard challenged his conviction further by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure.   In that application, Pollard argued that he was entitled to relief because the trial court erroneously admitted unreliable expert witness testimony.  Pollard argued further that the trial court was biased against him. In addition, Pollard complained that he was denied effective assistance of counsel at trial and on appeal.  The state habeas corpus court, which also presided over Pollard's trial, entered findings of fact and concluded that Pollard was not entitled to relief. The Texas Court of Criminal Appeals agreed and denied relief on February 9, 2009, without a written order, based on the trial court's findings.  *See Ex parte Pollard*, No. 71,230-01.

Pollard now seeks a federal writ of habeas corpus to challenge his state court conviction under 28 U.S.C. § 2254.  He has filed a memorandum of law in support of his petition for relief, along with a supplemental memorandum.  [Docs. # 1, # 2].  Pollard raises

essentially the same claims that were rejected on state habeas corpus review,[2] although he includes at least one affidavit that was not presented during his state habeas proceedings. The respondent has filed a motion for summary judgment, arguing that Pollard fails to show that he is entitled to federal habeas corpus relief.  [Doc. # 12].  The parties' contentions are addressed below under the applicable federal habeas corpus standard of review.

## II.    STANDARD OF REVIEW

The respondent's motion for summary judgment must be determined in compliance with the federal habeas corpus statutes.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002); *see also Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).  Federal habeas corpus proceedings filed after April 24, 1996 are governed by provisions of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA was enacted, at least in part, to ensure comity, finality, and deference to state court determinations by limiting the scope of collateral review and raising the standard for federal habeas relief.  *See Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003) (citations omitted).  As the Supreme Court has explained, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S.

---

[2]      In his federal petition, Pollard raises the following claims:  (1) he was denied effective assistance of counsel at trial; (2) the trial court erred by admitting unreliable expert witness testimony; (3) the trial court was biased against him; and (4) he was denied effective assistance of counsel on appeal.  [Doc. # 1, Petition].  The Court has re-ordered the claims for purposes of analysis.

19, 24 (2002) (internal citation omitted).  Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (quotation omitted).

To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.  For claims adjudicated on the merits, the AEDPA standard provides that a petitioner is not entitled to relief unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000); *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009).  A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case.  *Brown v. Payton*, 544 U.S. 133, 141 (2005). Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409.  The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v.*

*Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)), *cert. denied*, — U.S. —, 130 S. Ct. 367 (2009).

The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision. *See Early v. Packer*, 537 U.S. 3, 7 (2002). Likewise, a federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). For such a situation, a reviewing court (1) assumes that the state court applied the proper "clearly established Federal law"; and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

A state court's findings and conclusions are entitled to deference unless the petitioner shows that they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *Bunion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008), *cert. denied*, — U.S. —, 129 S. Ct. 1306 (2009). A state court's findings of fact are presumed to be correct on federal habeas review, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted). The claims in this case are addressed below under the deferential AEDPA standard.

6

III.     **DISCUSSION**

A.     **Expert Testimony**

Pollard complains that the trial court erred by admitting certain testimony from the medical examiner, Dr. Tommy Brown, who testified for the State as an expert witness. Pollard appears to claim that the testimony was unreliable and therefore inadmissible. Pollard reasons, therefore, that he is entitled to relief from his conviction.

To the extent that Pollard faults the trial court's evidentiary ruling, the admissibility of evidence is a matter governed by state law.  Even assuming that there was an error, an alleged violation of state law does not merit federal habeas corpus relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal habeas corpus court will not grant relief from errors in a state trial court's evidentiary rulings, if any, unless those errors resulted in a "denial of fundamental fairness" under the Fourteenth Amendment Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983)).  Pollard does not establish that his trial was tainted by fundamental error in this case.

The trial court's decision to admit the challenged expert testimony was reviewed at length on direct appeal.  The court of appeals reviewed the record and held that the trial court did not err in admitting Dr. Brown's testimony:

> In issue two, Pollard argues that the trial court erred in admitting Dr. Tommy Brown's testimony addressing the distance between the gun and the victim when the gun discharged. Pollard contends that Dr. Brown's testimony was based on scientific testing that Dr. Brown failed to properly apply.

7

We review the trial court's admission of expert testimony for an abuse of discretion. *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *Kelly v. State*, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992). The Court of Criminal Appeals held in *Kelly* that reliable evidence derived from a scientific theory must satisfy three criteria: (a) the underlying theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied. *Kelly*, 824 S.W.2d at 573. Factors affecting the trial court's proper determination of these criteria include, but are not limited to, (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such community can be ascertained; (2) the qualifications of any expert testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and to evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of any person who applied the technique on the occasion in question. *Id*. However, the "party seeking to introduce evidence of a scientific principle need not always present expert testimony, treatises, or other scientific material to satisfy the *Kelly* test." *Hernandez v. State*, 116 S.W.3d 26, 28-29 (Tex. Crim. App. 2003).

The State called Dr. Brown, the medical examiner who performed the autopsy on Megan, as a witness during its case. Pollard asserts that the trial court erred in permitting Dr. Brown to testify regarding the distance from which Pollard fired the shotgun at Megan. Specifically, Pollard contends that the State failed to meet its burden of proving by clear and convincing evidence that Dr. Brown's opinion met the three-prong *Kelly* criteria. Pollard's argument focuses on *Kelly*'s third prong, and he asserts that Dr. Brown failed to correctly apply the technique to determine the distance between the gun at discharge and the victim.

The record contains testimony addressing Dr. Brown's qualifications pertinent to his opinion regarding the discharge distance at issue. Dr. Brown is board certified in anatomic clinical pathology, nuclear medicine, and forensic pathology, and has a Texas medical license. As a pathologist, he conducts autopsies to determine the cause and manner of death, but focuses on unnatural deaths. Dr. Brown testified that he has performed around 10,000 autopsies, including more than a hundred that involved shotgun wounds. In determining the cause of death, Dr. Brown explained that he evaluates the body and the wound, and in some cases is able to approximate the distance between the muzzle and the decedent.

8

Dr. Brown testified that his training included attending gunshot wound courses and receiving instruction from Dr. Dimaio, a nationally recognized expert in evaluating gunshot wounds. Based on this training, Dr. Brown explained that he looked for specific wound characteristics to estimate the approximate discharge distance. During the *Kelly* hearing and in the presence of the jury, Dr. Brown testified in detail regarding variations in the appearance of a shotgun wound as it related to the discharge distance of the weapon. Based upon the autopsy of Megan and his training, Dr. Brown estimated that the end of the shotgun was three to four feet from Megan when the gun discharged. Dr. Brown explained that his discharge estimate was based on certain characteristics of the wound that were consistent with a relatively close discharge.

Additionally, Dr. Brown testified that a more precise or accurate measurement could be obtained by further testing. To do so, Dr. Brown explained that the actual firearm involved in a shooting could be test-fired against cardboard at various distances using the same or a similar box of ammunition as used in the event. The results from the discharge of the weapon onto the cardboard are then compared with the measurements of the victim's wound to establish a discharge distance.

In this case, Dr. Brown stated that he did not test-fire the weapon. In explaining the estimate he provided, Dr. Brown clearly explained that his discharge distance was an estimated distance. Throughout his testimony, Dr. Brown explained the bases of his findings and the methodology that he applied to estimate the distance between Megan and the shotgun when it discharged.

Pollard argued that Dr. Brown testified as a ballistics expert and did not properly apply the technique of the theory he relied upon to determine the distance from which the shotgun was fired. The record, however, shows that Dr. Brown's testimony was based upon his expertise as a medical examiner and his examination and evaluation of the characteristics of Megan's wound. Moreover, Dr. Brown identified his discharge distance as an estimate and explained how that distance could more accurately be determined. Pollard did not produce a ballistics expert to provide a discharge distance that contradicted Dr. Brown's estimate and fails to demonstrate on appeal how the degree of imprecision in Dr. Brown's estimate renders it unreliable. *See Morris v. State*, 214 S.W.3d 159, 174 (Tex. App. — Beaumont 2007, pet. filed). We conclude that the trial court did not err in admitting Dr. Brown's discharge estimate.

*Pollard*, 2007 WL 2493144, at **3-5.  Finding no error on the trial court's part, the court of appeals rejected Pollard's argument and affirmed his murder conviction.

Pollard does not demonstrate that the trial court violated state law by admitting Dr. Brown's testimony and he further fails to establish that his trial was rendered unfair as a result.  Absent a showing that his trial was rendered fundamentally unfair as the result of the trial court's ruling, Pollard does not demonstrate that the state court's decision to deny relief was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, Pollard is not entitled to a federal writ of habeas corpus on this issue.

### B.        Allegation of Bias

Pollard argues that he is entitled to relief because the trial judge was unfairly biased against him.  In support of this claim, Pollard alleges that the trial court made "impermissible and prejudicial comments" by telling counsel to "hurry along" with the case.  Pollard complains further that the trial court allowed the State to present contradictory or conflicting testimony and that the trial court refused to allow him to present "important facts and evidence" that would have supported his own version of the incident.

The record reflects that Pollard has filed a memorandum of law along with his habeas corpus petition. [Doc. # 1, Memorandum].   He has also provided a supplemental memorandum in support of his claims.  [Doc. # 2, Supplemental Memorandum].  The respondent notes, however, that Pollard fails to provide specific details in support of his claims or adequate citations to the record to substantiate his allegations of bias.

10

The Court agrees that, even under the liberal construction that applies to *pro se* pleadings, Pollard's conclusory allegations do not articulate a constitutional violation concerning the above-referenced rulings and comments attributed to the trial court. Because Pollard appears to rely solely on adverse judicial rulings as the origin of alleged bias, and not to any real evidence of improper motive or opinion derived from an extrajudicial source, his allegations are legally insufficient to demonstrate bias on the trial court's part. *See Liteky v. United States*, 510 U.S. 540, 555 (1994); *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003); *see also In re Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir. 1993) (noting that adverse rulings against a party in the same or a prior judicial proceeding "do not render the judge biased").

A review of the record does not disclose evidence that the trial court displayed any of the deep-seated, extreme favoritism or antagonism toward Pollard that is typically required to support an allegation of actual bias. *See Liteky*, 510 U.S. at 555; *Buntion v. Quarterman*, 524 F.3d 664, 673-74 (5th Cir. 2008). Absent evidence in the record, a federal habeas corpus court cannot consider a petitioner's "bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (citing *Woodard v. Beto*, 447 F.2d 103 (5th Cir.), *cert. denied*, 404 U.S. 957 (1971)). The Fifth Circuit has repeatedly emphasized that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross*, 694 F.2d at 1012 (citing *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases)).

11

Pollard's unsupported allegations are insufficient to show that the trial court was biased or unfair and he does not establish a constitutional violation.  Likewise, Pollard's allegations are insufficient to show that the state court's decision to deny relief was somehow based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, Pollard is not entitled to relief on this claim.

### C.     Ineffective Assistance of Counsel – Trial

Pollard complains that he was denied effective assistance of counsel at trial because his defense counsel failed to: (1) adequately investigate by requesting forensic testing; (2) to present a "ballistics" expert as a rebuttal witness; and (3) to call two family members as witnesses during the punishment phase.  Pollard's counsel provided a detailed affidavit in response to the allegations of ineffectiveness.  *See Ex parte Pollard*, No. 71,230-01 at 89-91.  The state habeas corpus court found that Pollard was adequately represented at trial and concluded that he failed to show that his counsel's performance was "deficient such that it affected the outcome of the trial." *Id*. at 102 (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the right to have the assistance of counsel at trial.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  The right to counsel guaranteed by the Sixth Amendment includes "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the

12

*Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See id.* at 687-88. To demonstrate deficient performance on his counsel's part, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That is, the defendant must overcome the presumption that, under the circumstances, "the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004).

Deficient performance, standing alone, is not sufficient to prevail under *Strickland*. Once a petitioner establishes error by his defense counsel, then he must still demonstrate actual prejudice as a result of his counsel's deficient performance. Performance is prejudicial only if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A

13

"reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Id*. Pollard's claims are discussed separately below under the *Strickland* standard.

### 1.       Failure to Investigate or Conduct Forensic Tests

Pollard complains that his appointed trial counsel (Scott Pagwan) was deficient because he failed to request forensic testing in the form of "gun powder residue" or "atomic absorption" tests, which "could have shown" that there were fingerprints from both the accused and the victim on the "muzzle of the shotgun." [Doc. # 1, Memorandum, at 8]. This claim is refuted by the record.

The state habeas corpus court found that defense counsel requested, and was appointed, a ballistics expert to assist with the preparation of Pollard's defense. *See Ex parte Pollard*, No. 71,230-01 at 101. Defense counsel also requested, and was appointed, a fingerprint expert. *See id*. The ballistics expert performed various examinations and testing on the shotgun that Pollard used to commit the offense. *See id*. Defense counsel conferred with the ballistics expert on the utility of performing gunshot residue tests and determined that such tests "would not yield significant results" which would assist Pollard's defense. *Id*. Defense counsel made a "tactical decision" not to call the fingerprint expert as a witness after he determined that the expert "was not able to locate usable prints on the barrel of the shotgun." *Id*.

The state court's findings, which Pollard does not rebut with clear and convincing evidence, are entitled to the presumption of correctness. 28 U.S.C. § 2254(e)(1). The state

court's findings are supported by the record, which shows that defense counsel had the assistance of an appointed ballistics expert and a fingerprint expert, but that forensic testing failed to yield any helpful results.

To the extent that Pollard claims that his counsel was deficient for failing to conduct additional forensic testing, he does not state with specificity what this additional testing would have revealed and how it would have changed the outcome of his trial. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Conclusory allegations of this sort are insufficient to demonstrate deficient performance or actual prejudice. *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence).

## 2.     Failure to Call a Ballistics Expert Witness

Pollard contends further that his counsel failed to dispute testimony from the medical examiner (Dr. Brown), who estimated that Pollard fired a shotgun at the victim from a distance of "3 to 4 feet." [*Id.* at 9]. Pollard complains that his counsel should have called a "ballistics expert" as a rebuttal witness to refute Dr. Brown's "misleading" testimony. [*Id.* at 9-10, 12]. As explained briefly below, Pollard fails to show that his counsel's performance was deficient.

15

The record reflects that, when questioned outside the jury's presence, Pollard agreed with his counsel's strategic decision not to present expert testimony during the defense case-in-chief. *See Court Reporter's Record*, vol. 4, at 148. Strategic decisions made by counsel during the course of trial are entitled to substantial deference in the hindsight of federal habeas review. *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight"). Pollard does not show that his counsel's decision was so ill chosen that his trial was rendered unfair as a result. *See Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Thus, Pollard fails to show that his defense counsel was deficient for failing to secure testimony from a ballistics expert.

More importantly, Pollard fails to demonstrate any prejudice as the result of his counsel's failure to call a ballistics expert to testify on his behalf. To demonstrate that a petitioner was prejudiced because his counsel failed to call a particular witness, he "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). Here, the record reflects that a ballistics expert was appointed to assist defense counsel with Pollard's defense. As defense counsel explained in his affidavit, however, the ballistics expert advised him that Dr. Brown's testimony (regarding his estimate about the distance of the shotgun to the victim) was accurate. *See Ex parte Pollard*, No. 71,230-01 at 90. Pollard does not show otherwise. Therefore, even if the ballistics expert had testified at trial, Pollard fails to demonstrate that his testimony would have been favorable. Under these

16

circumstances, Pollard does not demonstrate that his counsel's performance was deficient or that he was actually prejudiced as a result.

### 3.        Failure to Call Family Members as Witnesses

Pollard alleges that his defense counsel was deficient for failing to call his father, James Clay Pollard, and another family member identified as Sandra Joy Pollard,[3] as witnesses during the punishment phase of the trial.  At the state court level, Pollard presented nearly identical one-page affidavits from these individuals, who report that they were present at the sentencing phase of the trial and were available to testify, but were not asked to do so by defense counsel.  *See Ex parte Pollard*, No. 71,230-01 at 58-59.  On federal review, Pollard has provided an amended version of the affidavit from his father, which repeats essentially the same statement.[4]  Doc. # 2, Supplemental Memorandum, Exhibit A.

As outlined above, to demonstrate actual prejudice for the purpose of an ineffective-assistance claim, a prisoner must show that there is "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."

---

[3]        Pollard does not provide any information about his relation to Sandra Joy Pollard. According to her statement, she resided with Pollard's father, James Clay Pollard.  *See Ex parte Pollard*, No. 71,230-01 at 58-59.

[4]        The respondent argues that, because the amended affidavit was never presented to the state habeas corpus court, Pollard failed to exhaust available state court remedies with respect to its contents.  Pollard does not dispute that he could have, but did not, present the revised version to the state habeas corpus court.  To the extent that the affidavit contains new facts that were not presented to the state court, the affidavit is procedurally barred.  Even if not barred for procedural reasons, however, the respondent also correctly notes that the revised affidavit does not assist Pollard here because it is devoid of specific facts showing that he was entitled to leniency at sentencing.

*Strickland*, 466 U.S. at 694.  In the state sentencing context, the relevant inquiry under the prejudice prong of the *Strickland* test is whether, absent counsel's errors, there is a reasonable probability that the defendant's sentence would have been "'significantly less harsh,' *Spriggs v. Collins*, 993 F.2d 85, 88-89 (5th Cir. 1993), taking into account 'such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances.'" *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008) (citation and quotation omitted), *cert. denied*, — U.S. —, 130 S. Ct. 367 (2009).

Pollard was charged with murder, which is a first-degree felony that carried a punishment range of imprisonment for life or for any term of no more than ninety-nine years or less than five years in addition to a fine not to exceed $10,000.  *See* TEX. PENAL CODE §§ 12.32, 19.02.  The state presented evidence showing that Pollard shot his wife in the head with a shotgun and then tried to flee after his family counseled him to contact law enforcement.  Pollard reportedly displayed no remorse at the scene of the offense or during his arrest and he articulated little regret during his own testimony.  During the punishment phase of the trial, the state presented testimony from the victim's mother and from one of Pollard's former girlfriends, Rebekah Pillow.  Pillow, with whom Pollard had two young children, told the jury that Pollard had a violent temper and that he had threatened her with knives while he was intoxicated.  *Court Reporter's Record*, vol. 6, at 56-57.  In addition, the

state presented evidence showing that Pollard violated the conditions of his release prior to trial, resulting in the revocation of his bond.

Pollard testified on his own behalf during the punishment phase.  Pollard testified that his childhood was "normal," although he had "minimal" contact with his father. *See id.* at 65-66.  Contrary to the affidavit provided by James Clay Pollard on habeas review, Pollard testified that his father was not in attendance for the punishment proceeding.  *See id.* at 66. Pollard told the jury that his wife caused the shooting and that the gun discharged during a drunken argument.  *See id.* at 70-72.  Pollard testified that he regretted the accident and that he missed his wife every day.  *See id.* at 77-78.  On cross-examination, however, Pollard admitted that he was already engaged to another woman.  *See id.* at 79-80.  Pollard's mother, Blanche Pollard, testified that her son's father abandoned them and left them destitute when her son was very young.  *See id.* at 89.  She testified further that her son had five children, two with the victim, two with his former girlfriend (Pillow), and one additional child with another woman whose name was not disclosed.  *See id.* at 79, 91.  Apparently, Pollard was still in the process of establishing his paternity through the state courts.  *See id.* at 79, 91.

In his affidavit to the state court, defense counsel explained that he had strategic reasons for not calling James Clay and Sandra Joy Pollard as witnesses.  Noting that the jury deliberated for eight hours during the guilt/innocence phase, he believed there was "a considerable amount" of residual doubt about Pollard's guilt.  *Ex parte Pollard*, No. 71,230-01 at 90.  To capitalize on this residual doubt, counsel attempted to have Pollard testify on

his own behalf during the punishment phase and to express remorse for his wife's death.[5] *See id.* Defense counsel explained further that he did not call James Clay Pollard because, after conducting some research, he discovered that Mr. Pollard had a prior conviction for murder that involved disposing of the victim's body. *See id.*

Pollard argues that defense counsel's affidavit is incorrect because his uncle, William Greenwood (who was living with Blanche Pollard at the time of the offense), is the one who had the murder conviction.[6] Even if defense counsel was mistaken about his reason for not calling James Clay and Sandra Joy Pollard during the punishment phase, the facts asserted in their proposed affidavits do not establish ineffective assistance. The proposed affidavits simply state that James Clay and Sandra Joy Pollard were present at the sentencing stage of the trial and were willing to testify during that proceeding but that they were not asked to do so. *See Ex parte Pollard*, No. 71,230-01 at 58-59; Doc. # 2, Supplemental Memorandum, Exhibit A. As noted above, this contradicts Pollard's own testimony at trial, where he stated that his father was not in attendance. *Court Reporter's Record*, vol. 6, at 66. More importantly, the proposed affidavits do not include any facts showing that testimony from James Clay and Sandra Joy Pollard would have been favorable or that the result of the punishment proceeding would have been any different. In that regard, the affidavits do not

---

[5]     The record shows that it was Pollard's desire to testify. Prior to the punishment phase, defense counsel questioned Pollard outside of the jury's presence to clarify that he had discussed the "potential downsides" of his testimony and to show that Pollard was aware of the consequences. *Court Reporter's Record*, vol. 6, at 5-7.

[6]     This fact was mentioned at trial, when Greenwood testified for the State. *See Court Reporter's Record*, vol. 4, at 136-37.

provide any facts describing Pollard's good character and they offer no details about his background that would mitigate his actions or engender sympathy with the jury for purposes of sentencing. The Fifth Circuit has held that conclusory affidavits such as these "do not create a reasonable probability" that a defendant's sentence would have been "significantly less harsh[.]" *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008), *cert. denied*, — U.S. —, 130 S. Ct. 367 (2009). Therefore, the affidavits presented by Pollard are insufficient to demonstrate deficient performance or actual prejudice. *See id.*

Based on this record, Pollard does not show that he was denied effective assistance of counsel or establish a constitutional violation. More importantly, Pollard fails to demonstrate that the state court's decision to reject his ineffective-assistance claims was contrary to, or involved an unreasonable application of, the well-settled *Strickland* standard. Accordingly, Pollard is not entitled to relief on this issue.

### D. Ineffective Assistance of Counsel – Appeal

Pollard also contends that he is entitled to relief because he was denied effective assistance of counsel on direct appeal. A claim of ineffective assistance on appeal is also governed by the above-referenced *Strickland* test, which requires the defendant to establish both constitutionally deficient performance and actual prejudice. *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to a claim of ineffective assistance of counsel on appeal). To establish that appellate counsel's performance was deficient in the context of an appeal, the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to

21

discover non-frivolous issues and raise them. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If the defendant succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." *Id.*

In this case, Pollard alleges that his appointed appellate counsel (Lydia Clay-Jackson) failed to "effectively review" the trial record and to present or properly argue trial errors on direct appeal. [Doc. # 1, Memorandum, at 16]. In that respect, Pollard alleges that his appellate counsel "could have taken a more extensive tactical approach to the research and preparation of her appeal brief." [*Id.* at 17]. As a result, Pollard complains that she "missed crucial trial errors" and that she "put forth a less than meaningful argument on her appeal brief." [*Id.* at 18].

The state habeas corpus court rejected Pollard's claims after considering an affidavit from his appellate counsel. *See Ex parte Pollard*, No. 71,230-01 at 68. The state habeas corpus court found that Pollard's appellate counsel raised three points of error that, based on her review of the record, "constituted the only points of error with merit." *Id.* at 101. The state habeas corpus court concluded, therefore, that Pollard failed to show that his counsel's performance was deficient such that it affected the outcome of the appeal. *See id*. at 102 (citing *Strickland*, 466 U.S. at 689).

Pollard does not articulate what, if any, additional errors his appellate counsel could have, but did not raise on appeal. As discussed further above, Pollard has failed to show that any of his claims have merit. The right to counsel on appeal "does not include the right to

bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Robbins*, 528 U.S. at 278.  Appellate counsel is not deficient for not raising every non-frivolous issue on appeal. *United States v. Reinhart*, 357 F.3d 521, 524 (5th Cir. 2004) (citing *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 2000)).  To the contrary, counsel's failure to raise an issue on appeal will be considered deficient performance only when that decision "fall[s] below an objective standard of reasonableness." *Id*.  This standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id*. "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Id.*

Pollard fails to show that his appellate counsel was deficient for failing to raise a non-frivolous claim or that he was denied effective assistance of counsel on appeal under the *Strickland* standard.  Pollard does not otherwise establish that the state court's decision to reject his ineffective-assistance claims was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.  Therefore, Pollard is not entitled to federal habeas corpus relief on these claims.  Because Pollard has failed to demonstrate a valid claim for relief in this case, the respondent is entitled to summary judgment.

## IV.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d

1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not

debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right.  Therefore, a certificate of appealability will not issue.

**V.     CONCLUSION AND ORDER**

Based on the foregoing, the court **ORDERS** as follows:

1.      The respondent's motion for summary judgment [Doc. # 12] is **GRANTED**.

2.      The petition for a writ of habeas corpus [Doc. # 1] is **DENIED**, and this case is **DISMISSED** with prejudice.

3.      A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on <u>January 28</u>, 2010.

Nancy F. Atlas
United States District Judge